John H. Sud, SBN 035681
Benjamin D. Pierce, SBN 035096
**Sud & Pierce, PLLC**
141 East Palm Lane, Suite 100
Phoenix, Arizona 85004
jsud@sudandpierce.com
bpierce@sudandpierce.com

Nitin Sud (*pro hac vice pending*)
**Sud & Pierce, PLLC**
6750 West Loop South
Suite 920
Bellaire, TX 77401
Phone: 832-623-6420
nsud@sudandpierce.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BRIANNA LONGORIA,<br><br>Plaintiff,<br><br>vs.<br><br>MARY AND JOHN DOE METHENY; ANETTE AND JOHN DOE HANNAH; and CITY OF PHOENIX,<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Brianna Longoria ("Brianna" or "Plaintiff"), by and through the undersigned, hereby brings this Complaint against the above-listed defendants.

**INTRODUCTION**

1. This case arises from a policy, practice, or custom within the Phoenix PD under which officers assigned to DUI enforcement reasonably understood that failing to generate a sufficient number of arrests could result in adverse employment consequences, while escalating encounters into arrests was tolerated or expected. Despite clearly established constitutional rules requiring disengagement once objective evidence negates impairment, Defendants proceeded to arrest and prosecute Plaintiff without probable cause, consistent with those departmental practices.

2. This case arises from Phoenix Police Department officers' disregard of established constitutional rules governing DUI stops and arrests. At the time of the events at issue, it was clearly established that officers may not arrest or continue to detain a person for DUI once objective evidence affirmatively negates impairment, may not fabricate material facts in reports, and must intervene when they have a realistic opportunity to prevent an unlawful arrest.

3. Regardless, to further their careers and follow the City's inappropriate policy, practice, or custom of manufacturing DUI arrests, Defendants violated Brianna's rights.

4. If there is a word to describe this case, it is "fabricated." Defendants stopped Brianna as she was driving based upon a fabricated traffic infraction, field tested her based upon fabricated observations, and then jailed and prosecuted her based upon even more fabricated evidence. The charge was DUI of drugs.

5. Objective evidence confirms Defendants were wrong. Not only do the officers' body camera footage verify this, but blood and breath tests taken the night of Brianna's arrest objectively show she did not have any alcohol or drugs in her system.

6. Brianna's life has been forever changed by Defendants' wrongful arrest and prosecution of her. Her cancer treatment was delayed. She had her driver's license taken away for several months. Her academic endeavors were disrupted. Her career goals of becoming a nurse have been derailed. She was unable to go on her honeymoon. She had to spend money on a defense lawyer to get through the criminal justice system.

7. This action seeks accountability for Defendants' violations of clearly established constitutional rules.

### PARTIES

8. Brianna is a married woman and a resident of Fresno, California. The events giving rise to this Complaint occurred solely in Maricopa County, Arizona.

9. Defendant City of Phoenix (the "City") is a charter municipality and a political subdivision of the State of Arizona organized and existing under the laws of the State of Arizona. The City operates the Phoenix Police Department ("Phoenix PD") and is responsible for the policies, practices, supervision, training, and customs of the Phoenix Police Department.

10. Defendant Officer Mary Metheny ("Officer Metheny") and John Doe Metheny are presumably residents of Maricopa County, Arizona. They are named for the

3

purpose of binding the marital community under A.R.S. § 25-215 for claims brought under Arizona state law only. Officer Metheny is sued in her individual capacity, and no independent allegations are asserted against John Doe Metheny.

11. At all times alleged in this Complaint, Officer Metheny was a police officer employed by the City acting within the scope and course of her employment, and under the color of state law. She is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

12. Defendant Officer Anette Hannah ("Officer Hannah") and John Doe Hannah are presumably residents of Maricopa County, Arizona. They are named for the purpose of binding the marital community under A.R.S. § 25-215 for claims brought under Arizona state law only. Officer Hannah is sued in her individual capacity, and no independent allegations are asserted against John Doe Hannah.

13. At all times alleged in this Complaint, Officer Hannah was a police officer employed by the City acting within the scope and course of her employment, and under the color of state law. She is a "state actor" as that term is used under the jurisprudence of 42 U.S.C. § 1983.

14. The City is responsible for the conduct of its officers and employees, including Officer Metheny and Officer Hannah, and is liable to Brianna under state law resulting from their conduct under the theory of *respondeat superior*.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this dispute based on federal question jurisdiction, 28 U.S.C. §1331 and 42 U.S.C. §1983, and Article III, Section 2 of the United States Constitution.

16. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's Arizona state-law claim because that claim arises from the same nucleus of operative fact as the federal claims and form part of the same case or controversy.

17. As to Plaintiff's claims under Arizona state law, Plaintiff served a timely notice of claim pursuant to A.R.S. § 12-821.01 upon the City, Officer Metheny, and Officer Hannah. The notice of claim complied in all ways with the statute, was timely served, and is deemed denied by operation of statute.

18. This Court has personal jurisdiction over all parties because the events giving rise to this suit occurred in Maricopa County, Arizona.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all events or omissions giving rise to the claims occurred within the District of Arizona.

**JURY TRIAL DEMAND**

20. Plaintiff hereby demands a jury trial.

**FACTUAL BACKGROUND**

*A. Rules Governing Police Conduct*

21. Phoenix police officers must rely on actual violations to initiate traffic stops.

22. Phoenix police officers must have reasonable suspicion to initiate traffic stops.

5

23. Phoenix police officers require objective indicators of impairment to make a DUI arrest.

24. Phoenix police officers must not fabricate evidence.

25. Phoenix police officers must have probable cause in order to arrest an individual.

26. Phoenix police officers must not arrest somebody unless there is probable cause to arrest that individual.

27. Phoenix police officers must intervene when he/she observes a fellow officer violating an individual's constitutional rights.

28. The Phoenix PD must train its officers to protect individuals' civil rights.

29. At all relevant times, it was clearly established that Phoenix police officers must not arrest or prosecute without probable cause, must not fabricate evidence, and must intervene when they have a realistic opportunity to prevent constitutional violations.

30. At all relevant times, it was clearly established that the City must not prosecute without probable cause, must not fabricate evidence, and must intervene when they have a realistic opportunity to prevent constitutional violations.

### B. The Wrongful Stop of Brianna

31. Brianna was traveling northbound on 7th Street in Phoenix Arizona at approximately 10:57 PM in a rented 2024 Toyota Rav4 on December 29, 2024. Victor Delgado ("Victor") was sitting in the passenger side seat.

32. At about that same time, Officer Metheny was traveling westbound on East Washington Street and was stopped at a red light at the intersection of that street

6

and 7th Street when Brianna passed through the intersection with the green light in front of Officer Metheny.

33. [Body camera footage shows the light was green when Brianna passed through the intersection](#).

34. Officer Metheny turned on her lights and sirens and initiated a stop.

35. Brianna was driving lawfully when Officer Metheny initiated the traffic stop.

36. Brianna and Officer Metheny came to a stop on the side of the road near the intersection of East Monroe and 7th Street.

37. Officer Metheny claimed Brianna ran a red light.

38. Officer Metheny's claim of Brianna running a red light was not correct.

39. Officer Metheny had the ability to directly observe that Brianna did not run the red light. This is because Officer Metheny was positioned facing the intersection and had a clear view of the traffic lights.

40. Therefore, Officer Metheny had no valid reason to pull over Brianna.

41. Throughout the stop, Officer Metheny repeated the incorrect statement that Brianna ran a red light.

42. Officer Metheny filled out an incident report stating the light had turned from green, to yellow, to red before Brianna passed through the intersection. *See* Incident Report, attached hereto as **Exhibit 1**. That statement on the incident report was not correct.

43. Officer Metheny also stated, on the incident report, that Brianna had glossy eyes. That statement on the incident report was not correct.

44. Officer Metheny also stated, on the incident report, that Brianna had dilated pupils. That statement on the incident report was not correct.

45. Officer Metheny also stated, on the incident report, that Brianna had lack of convergence. That statement on the incident report was not correct.

46. There were other statements made on the incident report that were not correct.

47. Officer Metheny knew that the City's prosecutors would rely on her report.

48. The City did in fact rely on her report.

49. On January 12, 2025, Officer Metheny submitted a "Request to Void/Dismiss Citation," indicating that the charge of running the red light was "not accurate and needs to be removed," attached hereto as **Exhibit 2**.

50. Therefore, at least as of January 12, 2025, Officer Metheny had knowledge that the traffic stop was unlawfully initiated.

51. The traffic stop was the initiation of the prosecution of Brianna.

52. But, because the traffic stop was not based on reasonable suspicion, Brianna should have never been charged with the DUI.

### C.  The Arrest

53. During the stop, three other Phoenix Police officers arrived on the scene, and officer Metheny incorrectly states that Brianna ran a red light.

54. Officer Metheny claimed that Brianna's "eyes were red" and her pupils "were really big" while pantomiming large pupils.

55. Brianna's eyes were not red during the traffic stop.

56. Brianna's pupils were not dilated during the traffic stop.

57. When asked by another officer about whether she would do a Portable Breathalyzer Test ("PBT") on Brianna, Officer Metheny responded:

> I'll do a PBT, but there's no HGN, so I am not expecting it to be alcohol. That's why I asked her about marijuana. I mean it could be a plethora of things. Just a lot of things I am seeing are consistent with marijuana like she has the eyelid tremors, um, the red eyes. I mean it could be something else.

58. The body camera footage of paragraphs 53 to 57 can be seen here.

59. But Brianna did not have eyelid tremors, and she did not have red eyes.

60. Before using the PBT on Brianna, Officer Metheny told Brianna that, "So, I'm not suspecting any alcohol. I just want to rule it out." After the PBT was administered, Officer Metheny says, "Triple zeros. Just like I thought."

61. Therefore, the PBT confirmed that there was no alcohol in Brianna's system.

62. Accordingly, there was no probable cause to arrest Brianna based on having alcohol in her system.

63. Brianna exhibited normal speech and coordination.

64. Officer Metheny ran other field sobriety tests on Brianna.

65. This included a Horizontal Gaze Nystagmus (HGN) eye test. Brianna exhibited no impairment during this test.

66. No reasonable officer possessing the information known to Officer Metheny could have believed probable cause existed.

67. After having Brianna stopped for nineteen minutes, Officer Metheny chose to arrest Brianna.

68. Officer Metheny stated in her Admin Per Se/Implied Consent Affidavit (**Exhibit 3**) that the reasons for her belief that Brianna was driving "while under the influence of intoxicating liquor and/or drugs," was because of: a) running a red light; b) no illuminated tail lights; c) glossy eyes; d) dilated pupils; e) lack of convergence; f) eyelid tremors; g) poor perception of time/distance, h) field sobriety tests, and i) a PBT of .000.

69. Brianna did not run a red light, did not have glossy eyes, did not have dilated pupils, did not have a lack of convergence, and did not have eyelid tremors.

70. Not having illuminated tail lights does not give reasonable suspicion for either the stop or probable cause for the arrest.

71. As a whole, there was not probable cause to arrest Brianna.

72. That same night, prior to Brianna's arrest on the side of the road, three unknown male Phoenix PD officers arrived on the scene.

73. John Doe Officers #1 and #2 arrived on the scene in the same Phoenix PD vehicle.

74. John Doe Officer #1 exited the vehicle, and walked by as Officer Metheny was conducting a field sobriety test of Brianna.

75. John Doe Officer #1 approached the passenger side of Brianna's rental car and began speaking with her husband.

76. During that conversation, Brianna's husband (Victor) confirmed that Brianna had not consumed alcohol or drugs.

10

77. Toward the end of the conversation between John Doe Officer #1 and Victor, Officer Metheny approached Brianna's rental car, and explained they were going to arrest Brianna.

78. Even assuming reasonable suspicion existed at the inception of the stop, any such suspicion fully dissipated once officers obtained objective, exculpatory evidence (such as the .000 PBT and normal HGN) after which no reasonable officer, possessing the information known to Officer Metheny, could believe probable cause existed at the time of the arrest.

79. Officer Metheny proceeded to arrest Brianna.

80. But Officer Metheny had no probable cause to arrest Brianna.

### D. Processing of Brianna at Police Station

81. Officer Metheny transported Brianna in her Phoenix PD vehicle to the police station.

82. At the police station, Officer Metheny initiated the processing of Brianna's arrest.

83. Shortly thereafter, Officer Hannah arrived in the room at the police station that Officer Metheny and Brianna were in.

84. Officer Metheny, while processing Brianna, specifically said, "I'm skipping the drinking questions because they are not applicable." Again, Officer Metheny acknowledged she did not suspect that Brianna was driving under the influence of alcohol.

85. Officer Metheny and Brianna further discussed Brianna's future career options as a nurse while Brianna was being processed.

11

86. Furthermore, Officer Hannah explained to Brianna that Officer Metheny had done field sobriety tests "out in the street," and that she would be conducting those tests on Brianna in a "controlled environment" and in a "little more depth."

87. After performing the field sobriety tests indoors, Officer Hannah stated to Officer Metheny, "Everything is super, super low. [inaudible]. Norms [sic]. No HGNs. I only got lack of smooth pursuit."

88. When questioned at the police station, Brianna repeatedly denied consuming any drugs, including marijuana or THC.

89. After Brianna's arrest, the Arizona Drug Influence Evaluation ("DRE Form"), attached hereto as **Exhibit 4**, conducted by Officer Hannah did not provide probable cause to charge Brianna with driving under the influence.

90. Brianna's mugshot, which is below, confirms that she did not have bloodshot eyes.



### E. DUI Quota by Phoenix Police Department

91. During the processing of Brianna, Officer Metheny and Officer Hannah engaged in the following conversation:

> Officer Hannah: They're going to kick me off squad if I don't get a DUI. But I seriously pulled like so [unintelligible]...
>
> Officer Metheny: No. No. There's nights where I don't get any. You're fine.
>
> Officer Hannah: But I'm like, I can't just conjure one up. I have tried.
>
> Officer Metheny: You can. You can.
>
> Officer Hannah: I hung out on Seventh Ave, by those bars.
>
> Officer Metheny: Bars?
>
> Officer Hannah: Bars. On Melrose. [pause] I pulled a couple over, and they were DDs [designated drivers].

92. Officer Hannah was fearful of being disciplined or punished based on a requirement to have a certain number of DUIs.

93. Upon information and belief, the City requires Phoenix police officers to obtain a minimum number of DUI arrests.

    a. This is a policy and practice of the City.

    b. Such a policy and practice of the City is inappropriate.

    c. Such a policy and practice of the City places the public in danger of false arrests.

    d. Such a policy and practice of the City shows that Phoenix policies officers are pressured to arrest individuals without sufficient probable cause.

13

e.  Such a policy and practice of the City shows that Phoenix policies officers are pressured to search individuals without having reasonable suspicion to do so.

f.  Such a policy and practice of the City shows that Phoenix policies officers are pressured to fabricate evidence.

94. The Defendants proceeded with charging and prosecuting Brianna with the charge of a drug DUI under A.R.S. § 28-1381(A)(3).

### F.  Malicious Prosecution of Brianna

95. Within eight hours of her release from Phoenix Police custody, Brianna also had her own blood drawn at her own expense. On January 2, 2025, Brianna's blood test results returned negative for any drugs, including marijuana, or alcohol.

96. On or around April 1, 2025, City of Phoenix prosecutor Amy B. La Voy ("Prosecutor La Voy") wrote in an email to Brianna's criminal defense counsel Brittany LaBerry ("Attorney LaBerry") that:

> I just took a look at this case. The prescreen has been completed and was negative. We are waiting on the secondary screen that the crime lab does. I have reviewed the case and prepare supplemental discovery of my phone call to the crime lab. I will also prepare a first regular plea offer (10/9) that will be open once the State investigates your client's out of state criminal history. We will be filing an add on charge of 28-1381A1 [sic]. The pleas offer will be plead to the A1 with the dismissal of the A3 charge.

97. The "A1" charge is a reference to driving or being in actual physical control of a vehicle while "under the influence of intoxicating liquor, any drug, a vapor

14

releasing substance containing a toxic substance or any combination of liquor, drugs, or vapor releasing substances if the person is impaired to slightest degree."

98. The "A3" charge is a reference to driving or being in actual physical control of a vehicle while "there is any drug defined in section 13-3401 or its metabolite in the person's body."

99. Raising an A1 charge contradicted all the evidence available to the City.

100. Such evidence available to the City at that time included the following: a) Officer Metheny's repeated comments during and after the traffic stop that she did not suspect that Brianna had alcohol, b) the field sobriety tests, c) the PBT results, and d) the blood test.

101. On April 3, 2025, Prosecutor LaVoy filed a Motion to Dismiss Without Prejudice.

102. On April 4, 2025, Attorney LaBerry questioned Prosecutor LaVoy in an email why the grounds for dismissal were not for lack of evidence.

103. Prosecutor LaVoy claimed that although the preliminary screen was negative, she was waiting on the secondary results due to a backlog in the laboratory and would determine whether she refiled the charges.

104. Because Prosecutor La Voy moved to dismiss without prejudice, Brianna could have been charged again until October 2025. *See* A.R.S. § 13-107(G).

105. To date, Prosecutor La Voy has not produced the results of the secondary screen.

### G. DMV Hearing and Reinstatement of Brianna's Driving Privileges

106. Upon her arrest for DUI, Brianna's license was suspended.

107. Brianna, through her counsel, moved for and received a stay of suspension of her driver's license.

108. However, Brianna's home state of California refused to reinstate her driving privileges until the criminal DUI and administrative DMV hearing had concluded against her. Therefore, she was without a driver's license until July 2025.

109. Not having a driver's license for several months prevented Brianna from engaging in several daily and necessary tasks.

110. On July 11, 2025, the Administrative Law Judge at the Arizona Department of Transportation Executive Hearing Office ("MVD ALJ") dismissed the Order of Suspension for Brianna's driver's license.

111. The reason for that dismissal was because Department of Transportation did not present sufficient evidence and the scope of the hearing included whether the arresting officer had "reasonable grounds to believe the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs." *See* Order, dated July 11, 2025, attached hereto as **Exhibit 5.**

112. At the hearing, the MVD ALJ noted that the arresting officer, Officer Metheny, had recently resigned from the Phoenix PD.

113. Officer Metheny has resigned from the Phoenix PD.

### *H. Impact on Brianna's Life*

#### *i.  Brianna's cancer treatment was delayed*

114.  At the time of her arrest, Brianna was suffering from cervical cancer and had two major surgeries scheduled.

115.  Due to the arrest and ongoing prosecution, Brianna was without her driver's license. Lacking valid identification, Brianna's care was jeopardized because she had to obtain a California state ID to proceed with her surgeries.

116.  Since Brianna's driver's license was suspended after her arrest, she had issues obtaining transportation to medical appointments and even missed a procedure for her cancer.

#### *ii.  Brianna's education and future career was harmed*

117.  Nursing programs in California are highly competitive and administered on a points-based lottery system.

118.  At the time of her arrest, Brianna was taking pre-requisite courses to apply for nursing school.

119.  Due to a lack of transportation and stress from the ongoing criminal litigation against her, Brianna's grades suffered as a consequence for the Spring 2025 semester. Brianna's poor performance in the Spring 2025 semester likely harmed her admission prospects for nursing school.

120.  As part of the admissions process for a nursing program, Brianna will undergo extensive background checks. Brianna's arrest will likely appear in these

background checks and harm her chances of admission to a nursing program and subsequently becoming a nurse.

121. Brianna's plans were and are to become a nurse and eventually a nursing director. In either position, Brianna will make substantially more than she currently does working in medical records.

*iii. Brianna missed her honeymoon*

122. Brianna had just gotten married the day before her arrest.

123. Brianna was planning to go on a honeymoon with her new husband. However, the cost of defending the litigation against her and paying for alternative transportation to medical appointments and school prevented Brianna from going on her honeymoon.

124. Brianna missed out on a major life experience as a result of her wrongful arrest and prosecution.

**<u>FEDERAL COUNTS</u>**

125. To establish a civil rights claim under 42 U.S.C. § 1983, a plaintiff must show "(1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Smith v. City of Madera*, 2025 U.S. Dist. LEXIS 98853, *5 (E.D. Cal. May 23, 2025) (*citing Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991)).

126. Plaintiff alleges Defendants violated her civil rights as outlined below.

## COUNT I
*Malicious Prosecution*
(Against Defendant Officer Metheny)

127.    Each preceding paragraph is incorporated as if fully recited herein.

128.    Brianna has a Fourth and Fourteenth Amendment right to be free from malicious prosecution.

129.    Officer Metheny prosecuted Brianna with malice. During the processing of Brianna at the police station, Officers Metheny and Hannah had a discussion regarding an apparent DUI quota that had to be met to remain on the DUI unit for Phoenix PD. Officer Hannah explained she targeted the Melrose neighborhood of Phoenix, Arizona, pulled over a couple drivers, and was disappointed that they were designated drivers.

130.    During that same discussion, Officer Hannah said she could not "conjure one [DUI] up," and Officer Metheny replied, "You can. You can." Officer Metheny's prosecution of a DUI against Brianna was to meet the de facto DUI quota imposed by the City because Brianna was not driving impaired by any substance.

131.    Officer Metheny prosecuted Brianna without probable cause. Two weeks after she arrested Brianna, Officer Metheny conceded she was wrong and that Brianna had not run a red light. Officer Metheny used the fabricated red-light violation to pull over Brianna, and the stop would not have occurred otherwise.

19

132.     Furthermore, Officer Metheny lacked probable cause to prosecute Brianna for DUI because Officer Metheny stated repeatedly on body camera footage that she did not suspect that Brianna had drank alcohol.

133.     Officer Metheny's alternative alleged probable cause for prosecuting Brianna for a DUI was Brianna's eyes appearing blood-shot and watery. This allegation was belied by the mugshot taken of Brianna's face at the police station.

134.     As outlined above, Brianna did not run a red light, as Defendant Metheny later admitted, Brianna was not impaired, and Brianna did not show indicia of being impaired either at the scene of the arrest or at the police station.

135.     Brianna was not guilty of the charges levied against her.

136.     The proceedings terminated in her favor.

137.     Officer Metheny demonstrated her involvement in Brianna's prosecution by requesting the dismissal of the fabricated red-light violation against Brianna two weeks after Brianna's arrest.

138.     Officer Metheny acted maliciously, with reckless disregard, and/or with callous indifference.

139.     Brianna was damaged by the malicious prosecution in an amount to be proven at trial.

## COUNT II
*False Arrest and Imprisonment*
(Against Officer Metheny)

140.     Each preceding paragraph is incorporated as if fully recited herein.

20

141. Brianna has a Fourth Amendment right to be free from false arrest and imprisonment.

142. Officer Metheny did not secure a warrant for Brianna's arrest, so the burden is on Officer Metheny to prove Brianna's arrest was lawful.

143. Officer Metheny's arrest of Brianna was unlawful because she lacked probable cause to make the arrest.

144. No reasonable officer possessing the information known to Officer Metheny could have believed probable cause existed.

145. Officer Metheny pulled Brianna over for an alleged red-light violation. This was one of the reasons that Officer Metheny arrested Brianna for a DUI.

146. But Officer Metheny should not have pulled over Brianna because Brianna did not run a red light. Officer Metheny had no reasonable suspicion that Brianna ran a red light.

147. If Officer Metheny did not pull over Brianna, Brianna would not have been arrested.

148. Officer Metheny claimed probable cause for Brianna's arrest because Brianna's eyes were purportedly red and watery.

149. But Brianna's eyes were not red or otherwise irregular. This is shown in: a) the field sobriety tests; and b) Brianna's mugshot.

150. Brianna had not ingested drugs or alcohol at the time of her arrest.

151. This was confirmed by the PBT results and the blood work results.

152.    Officer Metheny's arrest of Brianna was based upon an erroneous stop, fabricated evidence, and a .000 PBT result.

153.    At the moment Officer Metheny made the decision to arrest Brianna, all objective indicators negated any impairment.

154.    Officer Metheny's reasons for claiming she had probable cause to arrest Brianna were erroneous. Therefore, Officer Metheny falsely arrested Brianna.

155.    Officer Metheny acted maliciously, with reckless disregard, and/or with callous indifference.

156.    Officer Metheny damaged Brianna by falsely arresting her in an amount to be proved at trial.

## COUNT III
*Unlawful Entry and Search*
(Against Officer Metheny)

157.    Each preceding paragraph is incorporated as if fully recited herein.

158.    Brianna has a Fourth Amendment right to be free from unlawful searches and seizures.

159.    Officer Metheny lacked a warrant to search Brianna.

160.    Officer Metheny lacked consent to search Brianna.

161.    Officer Metheny lacked probable cause to search Brianna.

162.    Officer Metheny lacked probable cause to seize Brianna and her personal effects, including her driver's license.

163.    No exigent circumstance existed for the search or seizure.

164.    Officer Metheny violated Brianna's Fourth Amendment rights when she arrested Brianna without probable cause as described above.

165.    Without probable cause, Officer Metheny's search of Brianna's person as part of Brianna's arrest was unlawful.

166.    An arrest without probable cause violates clearly established law.

167.    No reasonable officer possessing the information known to Officer Metheny could have believed probable cause existed to arrest Brianna.

168.    Because the arrest lacked probable cause, any search incident to that arrest was likewise unconstitutional under clearly established law.

169.    Officer Metheny acted maliciously, with reckless disregard, and/or with callous indifference.

170.    Officer Metheny's illegal seizure and search of Brianna caused Brianna damages that will be proven at trial.

## COUNT IV
### *Failure to Intervene*
(Against Officer Hannah)

171.    Each preceding paragraph is incorporated as if fully recited herein.

172.    Officer Hannah had the opportunity to intervene and stop the violation of Brianna's civil rights, but failed to do so.

173.    In her own words, Officer Hannah ran more in-depth sobriety testing on Brianna at the police station than was conducted on the side of the road by Officer Metheny.

174.    Officer Hannah did not observe any impairment by Brianna.

23

175.    Officer Hannah prepared the DRE Report based upon the tests she ran on Brianna on December 30, 2024.

176.    In the DRE Report, Officer Hannah noted that the Breath Test results were 0.000, or in other words, negative for alcohol.

177.    In the DRE Report, Officer Hannah indicated the only eye abnormalities that Officer Hannah claimed to observe were that Brianna's eyes were bloodshot and droopy.

178.    But Brianna's eyes were not bloodshot and not droopy.

179.    Brianna's mugshot confirms her eyes were not bloodshot or droopy.

180.    But even if Brianna's eyes were bloodshot and droopy, those conditions alone are not sufficient to have probable cause to arrest somebody for a DUI.

181.    Officer Hannah had an opportunity to intervene and terminate the arrest of Brianna when she observed that Officer Metheny lacked probable cause to arrest Brianna.

182.    Officer Hannah knew there was no probable cause to arrest Brianna.

183.    Rather, Officer Hannah chose to take no action and allow the arrest of Brianna to proceed.

184.    Officer Hannah could have advised releasing Brianna. But she did not do that.

185.    It was clearly established that officers with a realistic opportunity to intercede must do so.

24

186.    Accordingly, Officer Hannah is equally liable for the violation of Brianna's civil rights.

187.    Officer Hannah acted maliciously, with reckless disregard, and/or with callous indifference.

188.    Brianna was damaged by Officer Hannah's failure to intervene in an amount to be proven at trial.

### COUNT V
*Fabrication of Evidence*
(Against Officer Metheny)

189.    Each preceding paragraph is incorporated as if fully recited herein.

190.    Officer Metheny deliberately fabricated the evidence used against Brianna to wrongfully prosecute her.

191.    Fabricating evidence is a violation of Brianna's Fourth and Fourteenth Amendment rights.

192.    Specifically, Officer Metheny deliberately fabricated Brianna ran the red light, which was the pretext for the traffic stop. Later, Officer Metheny admitted this was not true, and Brianna did not run the red light.

193.    Officer Metheny then deliberately fabricated the results of field sobriety test. Again, the breath and blood tests showed Brianna was completely sober the night of the arrest.

194.    Officer Metheny then deliberately fabricated the results of the sobriety tests taken at the station.  But Brianna was demonstrably sober.

25

195.    Ultimately, after all other evidence had been debunked, it turned out Brianna was arrested and charged for DUI based solely upon "droopy" or "bloodshot" eyes. Even this assertion is demonstrably untrue as shown by Brianna's mugshot taken the night of the arrest.

196.    Indeed, as discussed, Officer Metheny's fabrication of evidence was common, and it was standard practice for her to "conjure" DUI arrests.

197.    The fabricated evidence served as the evidentiary basis for Brianna's arrest and prosecution.

198.    The fabrication of evidence caused Brianna to suffer a deprivation of life and liberty and sequelae of harms that fabrication has caused to Brianna is profound.

199.    Based upon fabricated evidence, Brianna was detained, arrested, fingerprinted, and drug tested multiple times using multiple methods over the course of several hours the night of the arrest.

200.    The fabricated evidence then served as the basis for Brianna's prosecution. The months of wrongful prosecution based upon the fabricated evidence delayed Brianna's cancer treatment, deprived her of the enjoyment of her honeymoon, delayed the schooling she is required to attend to become a nurse, and has permanently damaged Brianna's ability to be admitted to nursing school.

201.    If Brianna can manage to become a nurse, she will forever be required to explain why she was arrested, how that arrest was wrongful, and the results of this

26

suit. This is compounded by the fact Brianna was charged with DUI drugs, which is a disqualifier for any nurse due to their handling of controlled substances.

202.   Officer Metheny acted maliciously, with reckless disregard, and/or with callous indifference.

### COUNT VI
*Monell Claims - Policy, Practice, or Custom*
(Against City of Phoenix)

203.   Each preceding paragraph is incorporated as if fully recited herein.

204.   Under the Fourth and Fourteenth Amendments, Brianna has the constitutional right to not be wrongfully arrested, searched, and prosecuted by the City's police officers.

205.   Defendants are aware of the rules that require probable cause to arrest an individual.

206.   Defendants are aware of the rules that a DUI arrest must require objective impairment.

207.   The City had a policy, practice, and/or custom to escalate DUI stops despite negative indicators.

208.   The City had a policy, practice, and/or custom to discipline or reprimand officers if they did not achieve a certain number of DUI arrests.

209.   The Phoenix PD officers – including Officers Metheny and Hannah – understood that DUI arrest numbers were monitored and affected their assignments, evaluations, or continued placement on DUI enforcement units.

210. The Phoenix PD officers – including Officers Metheny and Hannah – understood there were adverse consequences to their employment if they did not achieve a certain number of DUI arrests.

211. Supervisors of Phoenix PD officers – including Officers Metheny and Hannah – reviewed DUI arrest statistics.

212. Therefore, the City had a de facto DUI quota that was violative of Brianna's civil rights.

213. While processing Brianna for a DUI arrest, Officers Metheny and Hannah had an explicit discussion of a de facto DUI quota in order to stay on the DUI squad for Phoenix PD.

214. Officer Hannah was concerned about her job if she did not get more DUI arrests.

215. In that conversation, Officer Hannah acknowledged pulling over designated drivers when trying to meet the City's de facto DUI quota.

216. Officer Hannah's statements about pulling over designated drivers demonstrates a City policy of Phoenix PD officers stopping drivers without reasonable suspicion.

217. Officer Metheny encouraged Officer Hannah to "conjure" up DUIs, or in other words, fabricate evidence to create probable cause for DUI arrests.

218. Furthermore, in the conversation between John Doe Officer #1 and Brianna's husband Victor regarding why Brianna was being arrested for DUI if her blood alcohol was .000, John Does Officer #1 said:

28

And so, like that's part of it. Per our policy, we do like a blood draw and everything…. If it comes back with nothing in the system, then the City will do whatever they want to do with those results.

219. Therefore, based on John Doe Officer #1's statement, the City has a policy of doing "whatever they want to do" even after obtaining complete and objective exculpatory evidence of sobriety.

220. In April 2025, in conformance with the City's policy to do "whatever" it wants to do, after Brianna's preliminary blood work came back negative for drugs or alcohol, the City's prosecutor stated she would add a DUI for alcohol charge.

221. The conversation between Officers Metheny and Hannah, the conversation between John Doe Officer #1 and Victor, and Prosecutor LaVoy's threats and actions demonstrate that the City has a policy of falsely arresting drivers for DUI based on fabricated evidence and attempting to force its citizens to accept plea deals for those false arrests.

222. Brianna suffered a stop based upon a fabricated red-light violation by Officer Metheny, false arrest from evidence manufactured by Officer Metheny, and then further malicious prosecution in attempt to force her to accept a plea agreement in order to satisfy the City's de facto DUI quota.

223. The City's policy was the driving force behind the violation of Brianna's civil rights, specifically her Fourth and Fourteenth Amendment rights, and her subsequent damages which will be proven at trial.

**COUNT VII**
*Monell Claims – Failure to Train or Supervise*
(Against City of Phoenix)

224.    Each preceding paragraph is incorporated as if fully recited herein.

225.    The City failed to train its officers – including Officers Metheny and Hannah – to refrain from fabricating evidence.

226.    The City failed to train its officers – including Officers Metheny and Hannah – to rely on objective evidence when conducting field sobriety tests.

227.    The City failed to train its officers – including Officer Metheny – to refrain from escalating DUI investigations into arrests even after objective evidence negated impairment.

228.    The City failed to train its officers—including Officers Metheny and Hannah—on reasonable suspicion for pulling drivers over.

229.    The City failed to adequately train and supervise its officers – including Officers Metheny and Hannah – to protect individuals' constitutional rights when evaluating whether to arrest them.

230.    Supervisors of Phoenix PD officers – including Officers Metheny and Hannah – failed to discipline officers for making arrests lacking probable cause.

231.    The City's failure to train and supervise Officer Metheny led to Officer Metheny pulling over Brianna for a false red-light violation.

232.    The City's failure to train and supervise Officer Metheny led to Officer Metheny pulling over Brianna without reasonable suspicion.

30

233. The City's failure to train and supervise Officer Metheny led to Officer Metheny arresting Brianna based upon fabricated evidence.

234. The City's failure to train and supervise Officer Metheny led to Officer Metheny arresting Brianna even without probable cause.

235. The City's failure to train and supervise Officer Hannah led to Officer Hannah failing to intervene in and terminate Brianna's arrest when, after testing Brianna in the police station, it was clear there was not probable cause to arrest Brianna.

236. Brianna was harmed as a result of the City's failure to train and supervise Officers Metheny and Hannah in an amount to be proven at trial.

**<u>STATE COUNT</u>**
**<u>COUNT VIII</u>**
*Malicious Prosecution*
(Against all Defendants)

237. Each preceding paragraph is incorporated as if fully recited herein.

238. At all relevant times, Officers Metheny and Hannah were acting in the course and scope of their employment for the City.

239. The City is vicariously liable for the acts of Officers Metheny and Hannah.

240. Officer Metheny initiated a criminal prosecution of Brianna by arresting her for DUI drugs.

241. Officer Metheny did not secure a warrant for Brianna's arrest, so the burden is on Officer Metheny to prove Brianna's arrest was lawful.

242.     Officer Metheny lacked probable cause to arrest Brianna for DUI drugs because the stop of Brianna was based upon an erroneous red-light violation, Brianna's eyes being alleged red and otherwise irregular which was not supported by the body camera footage or Brianna's mugshot, and Brianna's bloodwork was negative for drugs and alcohol.

243.     Officer Metheny had continuing involvement and/or control of the prosecution. For example, she had the red-light violation charge dismissed against Brianna two weeks after Brianna's arrest.

244.     After conducting in-depth sobriety tests including a breathalyzer test that was .000, Officer Hannah lacked probable cause to allow the arrest of Brianna to continue.

245.     Officer Hannah failed to intervene and terminate the arrest of Brianna.

246.     The City ratified the conduct of Officers Metheny and Hannah.

247.     The City continued to prosecute Brianna for DUI drugs after receiving preliminary results that Brianna had no drugs or alcohol in her blood at the time of her arrest.

248.     Brianna's criminal prosecution ended in her favor with a dismissal of all charges against her.

249.     Despite dismissing the DUI charge, the City continued to pursue an administrative case against Brianna before the DMV based upon her arrest for DUI.

32

250.     Even in April 2025 – after the prosecutor dismissed the criminal charge – the City did not take any steps to rectify the ongoing administrative proceedings relating to the suspension of Brianna's driver's license.

251.     In July 2025, the administrative proceeding against Brianna was dismissed for, lack of "reasonable grounds to believe the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs."

252.     Brianna suffered extensive damages as a result of the malicious prosecution by Defendants.

## CONCLUSION AND PRAYER FOR RELIEF

253.     Officers Metheny and Hannah knew Brianna was not impaired, knew probable cause was lacking, and nevertheless arrested and prosecuted Brianna in reckless disregard of her constitutional rights – conduct encouraged and tolerated by the City's policies, practices, and customs.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.  For general and special damages, including but not limited to economic losses and loss of future income, for any detriment to Brianna's health or lifespan from delays in her cancer treatment, attorneys' fees and costs for Brianna's criminal case, Brianna's missed honeymoon, and Brianna's pain and suffering;

B.  For declaratory and injunctive relief, including the following: a) the Defendant City to remove Brianna's false arrest for DUI from all government records; b) the Defendant City to implement changes to its policies, practices, and customs; and

c) the Defendant City to implement appropriate training and oversight of its officers.

C.  For punitive damages against Defendants Officer Metheny and John Doe Metheny and Officer Hannah and John Doe Hannah to the extent permitted by law;

D.  For pre- and post-judgment interest as permitted by law;

E.  For attorneys' fees and taxable costs under 42 U.S.C. § 1988 to the extent permitted by law; and

F.  Such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 23rd day of December 2025.

**SUD & PIERCE, PLLC**

By: */s/ John H. Sud*
John H. Sud
Benjamin D. Pierce
141 E Palm Lane
Suite 100
Phoenix, Arizona 85004

Nitin Sud (*pro hac vice pending*)
6750 West Loop South
Suite 920
Bellaire, TX 77401
832-623-6420

34

EXHIBIT

#1

**PHOENIX POLICE DEPARTMENT (0723)**

# Incident Report

Ex. #1

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |

| Report Type | |
|---|---|
| Incident Report | Page 1 of 9 |

| Date / Time Occurred | Date / Time Reported |
|---|---|
| 12/29/2024 22:57 to | 12/29/2024 22:57 |

| ARR/SUB Suspects | Additional Suspects | Unknown Suspects | Victims | Other Persons | Vehicles | Items | Evidence Count | Leoka Count | Related Report # |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | 1 | 1 | 1 | | 1 | | |

☐ Arson Related  Arson Code  Damage Value  ☐ Bias Crime  ☐ Gang Involved  ☐ Domestic Violence

## Incident Details

| Squad | Clearance Disposition | Cleared by Exception | Exceptional Clearance Date |
|---|---|---|---|
| T39 | | | |

| Situation Found | Status |
|---|---|
| RESULTED IN BODY CAMERA ACTIVATION | |

| Location Given By Dispatcher | Cargo Theft |
|---|---|
| | NO |

## Incident Address

Street Address
E MONROE ST & N 7TH ST

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85034 | |

## Administrative Info

| Reporting Officer | Serial # |
|---|---|
| METHENY, MARY | 10818 |

## OFFENSE

☑ Primary Offense

Offense Description
DUI-DANGEROUS DRUGS OR METABOLITE

| Offense/Statute Code | Severity | Attempted/Completed | Premise Type |
|---|---|---|---|
| 28-1381A3  010 | MISDEMEANOR | COMPLETED | VEHICLE |

| Circumstances | Bias | Bias 2 |
|---|---|---|
| | NONE | |

| Bias 3 | Bias 4 | Bias 5 |
|---|---|---|
| | | |

| Criminal Activity 1 | Criminal Activity 2 | Criminal Activity 3 |
|---|---|---|
| | | |

| Offender Using 1 | Offender Using 2 | Offender Using 3 |
|---|---|---|
| DRUG/NARCOTICS | | |

| # Premise Entered | Home Invasion | Domestic Violence | Gang Activity |
|---|---|---|---|
| | | | |

| Primary Gang Type | Primary Gang Name |
|---|---|
| | |

| Secondary Gang Type | Secondary Gang Name |
|---|---|
| | |

| Drug Related | Drug Type | Drug Origin | Drug Precursors |
|---|---|---|---|
| | | | |

### MO Panel

| Entry Type | Entry Area | Entry Method |
|---|---|---|
| | | |

| Entry Point 1 | Entry Point 2 | Exit Point 1 |
|---|---|---|
| | | |

| Exit Point 2 | Target Area | Property Target 1 |
|---|---|---|
| | | |

| Property Target 2 | Property Target 3 | Victim Target |
|---|---|---|
| | | |

| Time of Day | Victim Activity | Action 1 to Premises |
|---|---|---|
| | | |

| Action 2 to Premises | Action 3 to Premises | Action 1 on Victim |
|---|---|---|
| | | |

| Action 2 on Victim | Action 3 on Victim | Other Action 1 |
|---|---|---|
| | | |

| Other Action 2 | Other Action 3 | Solicited Offered 1 |
|---|---|---|
| | | |

| Solicited Offered 2 | Solicited Offered 3 | Weapon 1 |
|---|---|---|
| | | |

| Weapon 1 Auto | Weapon 2 | Weapon 2 Auto |
|---|---|---|
| | | |

| Weapon 3 | Weapon 3 Auto | Arson |
|---|---|---|
| | | |

| Precipitating Circumstance | Instrument Used |
|---|---|
| | |

Comments

**010**



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 2 of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57     to | 12/29/2024 22:57 |

**SUSPECT** ☑ Known   ☐ Unknown   ☑ ARR/SUB

Name (Last, First Middle): **LONGORIA, BRIANNA BEATRICE**   Suffix

| Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range to | Age At Time Of Incident |
|---|---|---|---|---|---|---|---|
| | | FEMALE | | | | | |

| Height | Weight | Driver's License # | DL State | DL Class | DL Restrictions |
|---|---|---|---|---|---|
| | | | ARIZONA | OPERATOR | |

| Primary Language | Place of Birth | Citizenship | Ethnicity | Marital Status |
|---|---|---|---|---|
| | ARIZONA | UNITED STATES OF AMERICA | | |

| SIB Check Result | ICE Contact Date | ICE Phone # | ICE Response |
|---|---|---|---|
| | | | |

| Preferred | Home Phone | Cell Phone | Email Address |
|---|---|---|---|
| | | | |

Additional Email or Social Media Handle   Social Media Types

### Suspect Home Address

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|
| | CALIFORNIA | | |

Place Name

### Mailing Address

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|
| | | | |

### Suspect Employment Information

☐ Student   ☐ Homeless   Employer / School   Occupation   Work Phone

| Street Address |
|---|

| City | State | Zip | Country Code |
|---|---|---|---|
| | | | |

| Hours of Employment | Days Off |
|---|---|

### Details

| Hair Color | Hair Length | Glasses | Eye Color | Build | Facial Hair |
|---|---|---|---|---|---|
| BROWN | LONG | ☐ | HAZEL | HEAVY | |

| Facial Hair Color | Voice | Complexion | Teeth |
|---|---|---|---|
| | | | |

Clothing Description
**CARDIGAN, PANTS, TENNIS SHOES**

Misc 1

Misc 2

Trademarks of Suspect

| Injury 1 | Injury 2 | Injury 3 | Injury 4 | Injury 5 |
|---|---|---|---|---|

☐ Hospitalized   Hospital Facility   Resident **PHOENIX RESIDENT**

### MO Panel

| Entry Type | Entry Area | Entry Method |
|---|---|---|

| Entry Point | Exit Point | Target Area |
|---|---|---|

| Property Target 1 | Property Target 2 | Property Target 3 |
|---|---|---|

| Victim Target | Time of Day | Victim Activity |
|---|---|---|

| Action 1 on Victim | Action 2 on Victim | Action 3 on Victim |
|---|---|---|

| Action 1 to Premises | Action 2 to Premises | Action 3 to Premises |
|---|---|---|

**011**



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 3 of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57 to | 12/29/2024 22:57 |

| Other Action 1 | Other Action 2 | Other Action 3 |
|---|---|---|
| Solicited Offered 1 | Solicited Offered 2 | Solicited Offered 3 |
| Weapon 1 | Weapon 2 | Weapon 3 |
| Weapon 1 Type | Weapon 2 Type | Weapon 3 Type |
| Weapon 1 Caliber | Weapon 2 Caliber | Weapon 3 Caliber |
| Weapon 1 Color | Weapon 2 Color | Weapon 3 Color |
| Arson | Precipitating Circumstance | Instrument Used |

Comments

## Gang Information

☐ Primary Gang    Primary Gang Name    Primary Gang Membership Info

Primary Gang Location Info    Rival Gang Name

Colors/Logos

☐ Secondary Gang    Secondary Gang Name    Secondary Gang Membership Info

Secondary Gang Location    Rival Gang Name

Colors/Logos

☐ Clothing or Colors  ☐ Gang Tattoos  ☐ Paraphernalia or Photographs  ☐ Self Proclamation  ☐ Witness Testimony/Statement  ☐ Written/Electonic Correspondance

Other

## Guardian Information

☐ Guardian Notified    Guardian Notified By    Guardian Notified On

Guardian Of    Guardian Relationship

## Associated Offenses

| Offense | |
|---|---|
| DUI-DANGEROUS DRUGS OR METABOLITE | ☑ **Associated With Suspect** |

### ARR/SUB

| ARR/SUB As | ARR/SUB Number | ARR/SUB Action | Disposition |
|---|---|---|---|
| ☑ Adult  ☐ Juvenile | PHX202412301344 | ON-VIEW - TAKEN INTO CUSTODY W/O WARRANT | |

| ARR/SUB Date/Time | Booking Precinct | Consular Notified? | |
|---|---|---|---|
| 12/29/2024 23:17 | CENTRAL CITY PRECINCT | | ☑ Arrested on Scene |

| Miranda Date/Time | Subject Response | Mirandized By |
|---|---|---|
| | | METHENY,MARY |

## Arrest Address

Street Address
E MONROE ST & N 7TH ST

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85034 | |

| Arresting Officer | Squad | Complaint Date | Transporting Officer | Transported Date/Time |
|---|---|---|---|---|
| METHENY,MARY | T39 | 12/29/2024 | METHENY,MARY | |

| Weapon 1 | Automatic Weapon 1 | Weapon 2 |
|---|---|---|
| UNARMED | | |

| Automatic Weapon 2 | Multiple Clearance | Juvenile Disposition | Card Number |
|---|---|---|---|
| | SINGLE COUNT ARRESTEE | | |

| Warrant Number | Warrant Signed By | Gang Affiliation |
|---|---|---|
| | | |

**012**



**PHOENIX POLICE DEPARTMENT (0723)**
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 4 of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57   to | 12/29/2024 22:57 |

### Associated Charges

| Charge | Charge Code |
|---|---|
| DUI/DRUGS/METABOLITE | CLASS 1 MISDEMEANOR |

| Counts | PCN # | Property Value | Incident # | Warrant # | Offense Date / Time |
|---|---|---|---|---|---|
| 1 | | | | | 12/29/2024 22:57 |

**Victim**

### Statement of Probable Cause

ON 12/29/2024, AT APPROXIMATELY 23:17 HOURS, BRIANNA BEATRICE LONGORIA WAS PLACED UNDER ARREST FOR DRIVING WHILE UNDER THE INFLUENCE (DRUGS) AT N 7TH STREET AND E MONROE STREET, PHOENIX, AZ, 85034. SHE WAS THE DRIVER OF A BLACK 2024 TOYOTA RAV4 CA/9NBY683 WHEN SHE WAS STOPPED FOR RUNNING A RED LIGHT AND HAD NO TAIL LIGHTS ILLUMINATED. BRIANNA SEEMED SURPRISED SHE RAN THE RED LIGHT. SHE HAD GLOSSY EYES, HEAVY EYELIDS, DILATED PUPILS, LACK OF CONVERGENCE, AND SHOWED SEVERAL CUES ON FIELD SOBRIETY TESTS. SHE DEMONSTRATED A POOR PERCEPTION OF TIME DURING THE MODIFIED ROMBERG BALANCE TEST, AND HAD EYELID TREMORS.

### VICTIM

| Victim Type |
|---|
| SOCIETY / PUBLIC |

**Name (Last, First Middle)**
STATE OF ARIZONA

| Suffix | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range to |
|---|---|---|---|---|---|---|---|

| Infant Type | Height | Weight | Driver's License # | DL State | Primary Language | Age At Time Of Incident |
|---|---|---|---|---|---|---|

| Will Prosecute? | Can Identify Suspect? | Victims' Rights Decision | Victims' Rights Pamphlet provided. | Consular Notified? | Place of Birth |
|---|---|---|---|---|---|
| | | VICTIM REQUESTS RIGHTS | ☐ Yes  ☑ No | | |

| Citizenship | Ethnicity | Marital Status | Preferred | Home Phone | Cell Phone |
|---|---|---|---|---|---|

| Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|

### Victim Home Address

**Street Address**
620 W WASHINGTON ST

| City | State | Zip | Country Code |
|---|---|---|---|
| PHOENIX | ARIZONA | 85003 | UNITED STATES OF AMERICA (USA) |

### Employment Information

☐ Student   ☐ Homeless

| Employer / School | Occupation |
|---|---|

| College Name | On Campus ☐ Yes ☐ No | Work Phone | Hours of Employment |
|---|---|---|---|

**Street Address**

| City | State | Zip | Country Code |
|---|---|---|---|

### Details

| Hair Color | Eye Color | Build | Resident | Teeth |
|---|---|---|---|---|

| Injury 1 | Injury Description |
|---|---|

| Injury 2 | Injury 3 | Injury 4 | Injury 5 |
|---|---|---|---|

| Victim Condition | Victim-Offender Code |
|---|---|

**A. Assault/Homicide**  ☐ Yes ☐ No

| A. Assault/Homicide Circumstance 1 | A. Assault/Homicide Circumstance 2 |
|---|---|

**Justifiable Homicide**  ☐ Yes ☐ No

Justifiable Homicide Circumstance

☐ Victim Hospitalized

| Hospital Facility | Hospital Description |
|---|---|

| Under Influence Alcohol? | Under Influence Drugs? | DV Frame of Action | Domestic Violence Victim Transported |
|---|---|---|---|
| ☐ Yes ☐ No ☐ Unknown | ☐ Yes ☐ No ☐ Unknown | | ☐ Yes ☐ No |

| Violation of Protective Order | Cohabitant |
|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No |

013



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number 202400001913782 | CFS Incident # 202401913782 |
|---|---|
| Report Type Incident Report | Page 5 of 9 |
| Date / Time Occurred 12/29/2024 22:57 to | Date / Time Reported 12/29/2024 22:57 |

## Gang Information

☐ Primary Gang  Primary Gang Name  Primary Gang Membership Info

Primary Gang Location Info  Rival Gang Name

Colors/Logos

☐ Secondary Gang  Secondary Gang Name  Secondary Gang Membership Info

Secondary Gang Location  Rival Gang Name

Colors/Logos

☐ Clothing or Colors  ☐ Gang Tattoos  ☐ Paraphernalia or Photographs  ☐ Self Proclamation  ☐ Witness Testimony/Statement  ☐ Written/Electonic Correspondance

Other

## Guardian Information

☐ Guardian Notified  Guardian Notified By  Guardian Notified On

Guardian Of  Guardian Relationship

## Associated Offenses

**Offense**

DUI-DANGEROUS DRUGS OR METABOLITE  ☑ **Associated With Victim**

**OTHER PERSON**  Person Type
PASSENGER

Name (Last, First Middle)  Suffix

| Primary Language | Nickname | Race | Sex | SSN | Date of Birth | Age | Age Range to |
|---|---|---|---|---|---|---|---|

| Height | Weight | Driver's License # | DL State CALIFORNIA | Can Identify Suspect? |
|---|---|---|---|---|

| Place of Birth | Citizenship UNITED STATES OF AMERICA | Ethnicity HISPANIC | Marital Status MARRIED |
|---|---|---|---|

ICE Contact Date  ICE Phone #  ICE Response

| Home Phone | Cell Phone | Email Address | Additional Email or Social Media Handle | Social Media Types |
|---|---|---|---|---|

### Other Person Home Address

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

### Employment Information

☐ Student  ☐ Homeless  Employer / School  Occupation

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

### Details

| Work Phone | Hours of Employment | Hair Color | Hair Length | ☐ Glasses |
|---|---|---|---|---|

| Eye Color | Build | Facial Hair | Voice | Complexion |
|---|---|---|---|---|

Resident  Teeth

### Gang Information

☐ Primary Gang  Primary Gang Name  Primary Gang Membership Info

Primary Gang Location Info  Rival Gang Name

Colors/Logos

**014**



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 6 of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57    to | 12/29/2024 22:57 |

|  | Secondary Gang | Secondary Gang Name | Secondary Gang Membership Info |
|---|---|---|---|

Secondary Gang Location                    Rival Gang Name

Colors/Logos

☐ Clothing or Colors  ☐ Gang Tattoos  ☐ Paraphernalia or Photographs  ☐ Self Proclomation  ☐ Witness Testimony/Statement  ☐ Written/Electonic Correspondance

Other

### Guardian Information

☐ Guardian Notified    Guardian Notified By          Notified Method          Guardian Notified On

Guardian Of                              Guardian Relationship

---

| **VEHICLE** | Vehicle Year | Make | Model | VIN | | Plate # |
|---|---|---|---|---|---|---|
| | 2024 | TOYOTA | RAV4 | ▉▉▉▉▉ | ☐ VIN Validation Off | ▉▉▉▉ |

| State | Plate Type | Plate Month | Plate Year |
|---|---|---|---|
| CALIFORNIA | RENTED VEHICLE OR TRAILER | JUNE | 2025 |

| Vehicle Type | Body Style | Color | Secondary Color |
|---|---|---|---|
| AUTOMOBILE | STATION WAGON | BLACK | |

| Decal # | NIC | Involvement |
|---|---|---|

Other Identifiers

### Registered Owner Info

| Registered Owner Name (Last, First, MI) | ☐ Business | Sex | Race | DOB |
|---|---|---|---|---|

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

| Insurance Company | Policy Number | Insurance Expiration | Financed By/Titleholder |
|---|---|---|---|

### Vehicle Elements

☐ Stolen  ☐ Recovered

| Keys in Ignition | Rec'D Affidavit | Windows Closed | Ignition Locked | Trunk Locked | Radio In Car | Repo. Check | Tow List Check | Stolen Value |
|---|---|---|---|---|---|---|---|---|
| ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐ No | |

How Vehicle Entered                    How Vehicle Taken

| Recovered By | Recovery Date | Recovered Value | Recovery Code |
|---|---|---|---|

| Disposition | Battery in Car | Spare Tire in Car | Owner Notified By Recovering Officer |
|---|---|---|---|
| | ☐ Yes ☐ No | ☐ Yes ☐ No | ☐ Yes ☐No |

### Recovery Address

Street Address

| City | State | Zip | Country Code |
|---|---|---|---|

| ☐ Impounded ☐ Towed | Tow Report Number | Wrecker Service | Date Reported | Time Reported |
|---|---|---|---|---|

| Location Towed From | Location Towed To | Reason for Removal |
|---|---|---|

| Impounded By | Mileage | Tow Operator | Tow Truck Operator Signature |
|---|---|---|---|

**015**



**PHOENIX POLICE DEPARTMENT (0723)**
# Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 7 of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57    to | 12/29/2024 22:57 |

### Boat Information

| Propulsion | Length | Engine Power | Hull Mat | Hull Shape |
|---|---|---|---|---|
| | | | | |

### Associated Persons

| Related Person | Involvement |
|---|---|
| Suspect: LONGORIA, BRIANNA | DRIVER |

**Comment**

### EVIDENCE

| Barcode # | Category | Action |
|---|---|---|
| 51001723620 | BLOOD TUBE FOR ALCOHOL/DRUGS | EVIDENCE |

**Description**
2 TUBES OF BLOOD FROM BRIANNA BEATRICE LONGORIA

| Property Type | Qty/Unit | Unit of Measure | Brand |
|---|---|---|---|
| BLOOD TUBE | 2 | | |

| Model | Color | Serial Number | Owner Applied Number |
|---|---|---|---|
| | | | |

| Value Per Unit | Total Value | Registration Number | Registration State | Year |
|---|---|---|---|---|
| | | | | |

**NCIC Type**

**NCIC Code**                                              **NCIC Number**

**Comment**
PLEASE SUBMIT FOR DRUG ANALYSIS

| Impounded Site | Impounded By |
|---|---|
| CENTRAL CITY PRECINCT | METHENY,MARY |

**Summary**

Narrative Information

OFFICER METHENY 10818
PHOENIX POLICE DEPARTMENT
TRAFFIC UNIT - T39
****************************************************************

SYNOPSIS
****************************************************************
ON 12/29/2024, AT APPROXIMATELY 23:17 HOURS, BRIANNA BEATRICE LONGORIA WAS PLACED UNDER ARREST FOR DRIVING WHILE UNDER THE INFLUENCE (DRUGS) AT N 7TH STREET AND E MONROE STREET, PHOENIX, AZ, 85034. SHE WAS THE DRIVER OF A BLACK 2024 TOYOTA RAV4 CA/9NBY683 WHEN SHE WAS STOPPED FOR RUNNING A RED LIGHT AND HAD NO TAIL LIGHTS ILLUMINATED. BRIANNA SEEMED SURPRISED SHE RAN THE RED LIGHT. SHE HAD GLOSSY EYES, HEAVY EYELIDS, DILATED PUPILS, LACK OF CONVERGENCE, AND SHOWED SEVERAL CUES ON FIELD SOBRIETY TESTS. SHE DEMONSTRATED A POOR PERCEPTION OF TIME DURING THE MODIFIED ROMBERG BALANCE TEST, AND HAD EYELID TREMORS.

BRIANNA'S ARIZONA DRIVER LICENSE WAS VALID AT THE TIME OF HER ARREST.

NARRATIVE
****************************************************************
**VEHICLE IN MOTION**
ON 12/30/2024, AT APPROXIMATELY 22:57 HOURS, I CONDUCTED A TRAFFIC STOP ON A BLACK 2024 TOYOTA RAV4 BEARING CALIFORNIA LICENSE PLATE: 9NBY683. I WAS FACED WESTBOUND AT THE LIGHT AT N 7TH STREET AND E WASHINGTON STREET, WHEN I OBSERVED THE RAV4 TRAVELING NORTHBOUND IN THE #2 LANE OF N 7TH STREET, APPROACHING THE INTERSECTION WITH WASHINGTON ST. THE LIGHT CHANGED FROM GREEN TO YELLOW, TO RED. THE LIGHT TURNED RED BEFORE THE RAV4 WAS WITHIN A CAR LENGTH-OR-TWO OF THE CROSSWALK. I ALSO OBSERVED IT HAD NO TAIL LIGHTS OR LICENSE PLATE LIGHT ILLUMINATED.

PHOENIX POLICE DEPARTMENT (0723)
**Incident Report**

| Incident Number 202400001913782 | CFS Incident # 202401913782 |
|---|---|
| Report Type Incident Report | Page 8 of 9 |
| Date / Time Occurred 12/29/2024 22:57    to | Date / Time Reported 12/29/2024 22:57 |

**PERSONAL CONTACT**
I APPROACHED THE DRIVER WINDOW, WHERE I OBSERVED THERE WERE TWO OCCUPANTS: AN ADULT FEMALE IN THE DRIVER SEAT AND AN ADULT MALE IN THE FRONT PASSENGER SEAT. I INTRODUCED MYSELF AS A POLICE OFFICER AND EXPLAINED THE REASON FOR THE TRAFFIC STOP. WHILE CONVERSING WITH THE DRIVER, I SAW HER EYELIDS APPEARED HEAVY, HER EYES WERE GLOSSY, HER PUPILS APPEARED DILATED AND THE CORNER OF HER EYES WERE RED. I HAD HER MANEUVER THE LIGHT CONTROL ON THE VEHICLE, AND CONFIRMED THE TAIL LIGHTS DID IN FACT FUNCTION PROPERLY. SHE PROVIDED ME HER ARIZONA DRIVER LICENSE (D07763447), WHICH I USED TO POSITIVELY IDENTIFY HER AS BRIANNA BEATRICE LONGORIA.

**FIELD SOBRIETY TESTS**
I TOLD BRIANNA I WANTED TO MAKE SURE SHE WAS SAFE TO DRIVE, AND HAD HER EXIT AND JOIN ME ON THE FLAT CEMENT SIDEWALK. I ENSURED THE EMERGENCY LIGHTS FACING US WERE TURNED OFF. THERE WAS ADEQUATE LIGHTING FROM THE STREET LIGHTS.

BRIANNA ANSWERED THAT SHE WAS NOT WEARING ANY CONTACTS, WAS NOT ON ANY MEDICATIONS, AND HAD NO ISSUES WALKING OR BALANCING.

HORIZONTAL GAZE NYSTAGMUS: BRIANNA'S PUPILS WERE EQUAL IN SIZE WITH NO RESTING NYSTAGMUS. THEY TRACKED EQUALLY. I DID NOT OBSERVE ANY LACK OF SMOOTH PURSUIT, NOR DISTINCT AND SUSTAINED NYSTAGMUS AT MAXIMUM DEVIATION, NOR THE ONSET OF NYSTAGMUS PRIOR TO 45 DEGREES.

MODIFIED ROMBERG BALANCE: BRIANNA ESTIMATED 30 SECONDS IN 9 SECONDS, AND SHOWED EYELID TREMORS. WHEN I ASKED HOW LONG IT WAS, SHE INITIALLY ANSWERED 30 SECONDS. I ASKED HOW SHE ESTIMATED THE TIME, SHE SAID SHE COUNTED FAST. SOON AFTER, SHE THEN CHANGED IT TO 25 - 30 SECONDS.

WALK-AND-TURN: BRIANNA CONFIRMED SHE UNDERSTOOD THE INSTRUCTIONS. SHE MADE AN IMPROPER TURN, AND NONE OF HER STEPS BACK WERE HEEL TO TOE.

ONE-LEG-STAND: BRIANNA CHOSE TO RAISE HER RIGHT LEG. SHE PUT HER FOOT DOWN, SWAYED SIDE TO SIDE, AND LIFTED HER ARMS UP TO ALMOST A 90 DEGREE ANGLE IN A "BALANCING ACT" MOTION, AS SHE STRUGGLED TO STAY STRAIGHT.
**END OF FST'S**

BRIANNA'S PRELIMINARY BREATH TEST READ .000. SHE DENIED HAVING USED ANY DRUGS OR MEDICATIONS. I ADVISED HER SHE WAS UNDER ARREST FOR DUI, AND THAT SHE WAS ELIGIBLE TO BE CITED AND RELEASED. I TRANSPORTED HER TO THE CENTRAL CITY PRECINCT LOCATED AT 1902 S 16TH STREET, WHERE I PROCESSED HER FOR DUI. OFFICER HANNAH 11809 COMPLETED THE DRE EVALUATION WHILE I COMPLETED BRIANNA'S PAPERWORK. I ADVISED HER OF HER RIGHT TO ARRANGE AND PAY FOR AN INDEPENDENT CHEMICAL TEST. I SERVED HER WITH HER CITATION, ADMIN PER SE PAPERWORK, AND EXPLAINED HOW TO REQUEST AN ADOT HEARING. FOR FURTHER DETAILS REGARDING THE DUI PROCESS AND BLOOD DRAW, PLEASE REFER TO THE IMPAIRED DRIVER REPORT AND ADMIN PER SE ATTACHMENTS.

CONCLUSION
****************************************************************
ON 12/30/2024, BRIANNA BEATRICE LONGORIA WAS ISSUED CITATION #100763422 FOR THE FOLLOWING OFFENSES:

DUI (DRUGS), IN VIOLATION OF ARS 28-1381A3
FAIL TO STOP AT RED LIGHT, IN VIOLATION OF ARS 28-645A3A
RED TAIL LAMPS REQUIRED, IN VIOLATION OF ARS 28-925A

SHE PROVIDED HER INDEX FINGERPRINT AND SIGNATURE ON HER CITATION, THEN WAS RELEASED TO HER HUSBAND.

UPON BODY WORN CAMERA REVIEW, I LATER REALIZED THE NORTHBOUND LIGHT WAS IN FACT GREEN, AND DID NOT CHANGE AS I PERCEIVED. BRIANNA HAD ALREADY BEEN CITED AND RELEASED AT THIS TIME.

Public Narrative

**PHOENIX POLICE DEPARTMENT (0723)**
## Incident Report

| Incident Number | CFS Incident # |
|---|---|
| 202400001913782 | 202401913782 |
| Report Type | |
| Incident Report | Page 9  of 9 |
| Date / Time Occurred | Date / Time Reported |
| 12/29/2024 22:57      to | 12/29/2024 22:57 |

Public Narrative

EXHIBIT

#2



Ex. #2

# City of Phoenix

**To:**   James Vasquez, Sergeant
Traffic Bureau

**Date:**  January 12, 2025

**From:**   Mary Metheny #10818
Traffic Bureau

**Subject:**   **REQUEST TO VOID/DISMISS CITATION**

This memo is being generated to void/dismiss **ATTC/NOV #** <u>100763422</u>                per Operations Order 6.2, Arizona Traffic Ticket & Complaint.

**PURPOSE:**   ☐ Void ATTC      ☐ Dismiss ATTC      ☐ Lost ATTC      ☐ Impounded or Other
☐ Void NOV                         ☐ Lost NOV          ATTC

OR      ■ Void/Dismiss     Charge/s: <u>28-645A3A</u>                  _____

**OFFICER'S EXPLANATION:**

Charge 2 on the Citation: ARS 28-645A3A is not accurate, and needs to be removed. The other Charges correct and should still be submitted to City Court Accordingly.

Defendant Notified:
☐ Yes - ☐ In Person   ☐ By Phone   ☐ In Writing

■ No - Provide explanation below:

Defendant lives out of state and I work night-shift and am not awake during business hours. Defendant will still need to appear for other charges.

**SUPERVISOR'S COMMENTS/CORRECTIVE ACTION:**

Please void citiation as mentioned above.

**RECOMMENDATION:**   Please forward this form and any required attached document/s through the chain of command to the Strategic Information Bureau (SIB) Citation Accountability Detail by email to ppd.citations@phoenix.gov.

Direct Supervisor:   <u>Sgt   #8e8t</u>

Second Line Supervisor:   <u>L. Clh    9/26</u>

80-572D Rev.11/22

# EXHIBIT

# #3

**ADOT**

Motor Vehicle Division

40-5807 R07/24    azdot.gov

Mail Drop 533M
Motor Vehicle Division
PO Box 2100
Phoenix AZ 85001-2100

Ex. #3

# ADMIN PER SE/IMPLIED CONSENT AFFIDAVIT

LE or DR Case Number **2024-1913782**

Complaint Numbers Issued **100763422**

A.R.S. § charges:

☒ 28-1381 ☐ 28-1382 ☐ 28-1383
☐ 4-244.34 ☐ 13-1201 ☐ 13-1204
☐ Other Title 13, Chapter 11 charge: _____

☐ Yes ☒ No  While transporting hazardous material? (A.R.S. § 28-101)
☐ Yes ☒ No  While operating a commercial motor vehicle?
☐ Yes ☒ No  While operating a vehicle for hire or as a transportation network driver?

| Driver Name (first, middle, last, suffix) | | | Date of Birth | Driver License Number | Class | State |
|---|---|---|---|---|---|---|
| BRIANNA | BEATRICE | LONGORIA | /1994 | D077■ | D | AZ |

| Address | | City | State | Zip |
|---|---|---|---|---|
| ■R | | ■ | CA | 93722 |

On (date) **12/29/2024**, at (time) **2317**, at (location) **N 7TH ST & E MONROE ST**

☐ **Death or serious physical injury:** I had reasonable grounds to believe that the person was involved in a traffic accident resulting in death or serious physical injury, as defined in A.R.S. § 13-105, and probable cause to believe that the person caused the accident or was cited for a violation of any provision of A.R.S., Title 28, Chapter 4, or Chapter 3, Articles 2 through 15.

　　Among the facts leading to that belief were: _____

☒ I had reasonable grounds to believe the person named was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor and/or drugs, and I placed the named person under arrest therefor.

　　Among the facts leading to that belief were: **RAN RED LIGHT, NO LIGHTS TO REAR, GLOSSY EYES, DILATED PUPILS, LACK OF CONVERGENCE, EYELIDS TREMORS, POOR PERCEPTION TIME/DISTANCE, FST'S, PBT .000**

I believe the person was under the influence of: ☐ alcohol  ☒ drug(s)  ☐ alcohol & drug(s)

The Admonitions ☒ were read to the person  ☐ were not read because the person was either unconscious or incapable of refusal. Officer Initials:____ _____

The person: ☒ submitted  ☐ refused to submit/did not complete (warrant obtained)  ☐ was unconscious/incapable of refusal (warrant obtained)

　　If a warrant was obtained, the person refused to submit or did not complete the tests in the following manner:

_____

Test(s) administered: ☐ breath (Results: _____/_____)  ☒ blood  ☐ other: _____

Blood or other test results:  ☐ Indicated alcohol concentration of: _____

　　　　　☐ Indicated the presence of a drug listed in A.R.S § 13-3401 or its metabolite (results available)

　　　　　☒ Not available/pending

**OFFICER CERTIFICATION**  I certify that the above is true and correct. I request that any hearing be held in **MARICOPA** County.

| Law Enforcement Officer Name | Badge Number | Law Enforcement Officer Signature |
|---|---|---|
| METHENY | 10818 | *[signature]* 10818 |

| Additional Law Enforcement Officer Name/Badge Number | ORI Number | Law Enforcement Officer Agency/Station |
|---|---|---|
| | AZ0072300 | PHOENIX POLICE DEPARTMENT |

| Agency Address | | City | State | Zip |
|---|---|---|---|---|
| 302 E UNION HILLS DR | | PHOENIX | AZ | 85024 |

| Test Operator Name | Badge Number | Test Operator Signature |
|---|---|---|
| METHENY | 10818 | *[signature]* 10818 |

## SURRENDER OF ARIZONA DRIVER LICENSE

Pursuant to ARS 28-1321 and 28-1385, the law enforcement officer must require the surrender of all Arizona driver licenses or permits in the person's possession. If no license or permit is attached, state reason: ☐ Lost ☐ Destroyed ☐ Nonresident ☐ Other: _____

| ORDER OF SUSPENSION One box must be checked. | Date Served 12/30/2024 | Time Served 01:10 | Please see **reverse** side to request a Hearing or Summary Review and for information regarding restricted driving privilege eligibility. |
|---|---|---|---|

☐ Pursuant to ARS **28-1321**, your Arizona driving privilege is suspended effective 30 days from Date Served. The suspension is for 12 months, or 2 years if there is a prior implied consent refusal, within the last 84 months, on your record. This order is final unless a hearing is requested online or in writing and received within 30 days from Date Served. This action is a result of your failure to successfully complete, or refusal to submit to, tests to determine alcohol concentration or drug content. This suspension will not end until all reinstatement requirements are met including completion of alcohol or drug screening.

☒ Pursuant to ARS **28-1385**, your Arizona driving privilege is suspended for not less than 90 consecutive days effective 30 days from Date Served. This order is final unless a hearing or summary review is requested online or in writing and received within 30 days from Date Served. This suspension is a result of tests to which you submitted. This suspension will not end until all reinstatement requirements are met including completion of alcohol or drug screening.

**TEMPORARY DRIVER PERMIT** — This entire form will serve as a temporary driver permit that will expire 30 days from the Date Served. However, if you request a hearing or summary review, then this permit will remain valid until the hearing or summary review decision has been made. If your Arizona driver license/permit is currently suspended or revoked, this permit does not authorize you to operate a motor vehicle.

| Sex | Weight | Height | Eyes | Hair | Class | Restrictions |
|---|---|---|---|---|---|---|
| F | 191 | 411 | HAZ | BRO | D | |

| Permit Not Issued Because | Licensee Signature |
|---|---|
| | |

Motor Vehicle Division

**001**



**Motor Vehicle Division**

40-5807 R07/24    azdot.gov

Mail Drop 533M
Motor Vehicle Division
PO Box 2100
Phoenix AZ 85001-2100

# ADMONITIONS

LE or DR Case Number
2024-1913782

☒ Prior to reading the below admonitions, I ensured the suspect had been placed under arrest for at least one of the following charges: ARS 28-1381, ARS 28-1382, ARS 28-1383, ARS 4-244.34, ARS 13-1201, ARS 13-1204, other Title 13, Chapter 11 charge.

## ADMONITIONS

☒ Will you consent to a test or tests of your blood, breath, urine or other bodily substance for the purpose of determining your alcohol concentration or drug content?  ☒ Yes      ☐ No

## READ ONLY IF THE ARRESTEE CONSENTS TO TESTING

☒ If the test results are not available or indicate an alcohol concentration of 0.08 or above (0.04 or above in a commercial vehicle, a vehicle for hire, or as a transportation network driver) or indicate any drug defined in ARS § 13-3401 or its metabolite without a valid prescription, then your Arizona driving privilege will be suspended for not less than 90 consecutive days. Alcohol or drug screening must be completed before your privilege may be reinstated.

Will you consent to the tests?      ☒ Yes   ☐ No

Arrestee's Comments
1. YEAH, YES      2. YES

## READ ONLY IF THE ARRESTEE ANSWERS NO TO EITHER QUESTION ABOVE OR FAILS TO SUCCESSFULLY COMPLETE THE TESTS

☐ If you do not expressly agree to testing or do not successfully complete the tests, your Arizona driving privilege will be suspended for 12 months, or for two years if you've had a prior implied-consent refusal within the last 84 months.

☐ If the test results are not available or indicate an alcohol concentration of 0.08 or above (0.04 or above in a commercial vehicle, a vehicle for hire, or as a transportation network driver) or indicate any drug defined in ARS § 13-3401 or its metabolite without a valid prescription, then your Arizona driving privilege will be suspended for not less than 90 consecutive days.

☐ Alcohol or drug screening must be completed before your privilege may be reinstated.

Will you consent to the tests?   ☐ Yes   ☐ No

Arrestee's Comments

If the arrestee unreasonably delays the completion of test, read the following to the arrestee:

☐ You are not entitled to further delay before taking the tests. Any additional delay will be considered a refusal to submit to the tests.

Will you consent to the tests?      ☐ Yes   ☐ No

Arrestee's Comments

Additional Comments

Officer Signature
*[signature]* 1081/8

# EXHIBIT

## #4

## ARIZONA DRUG INFLUENCE EVALUATION

| Evaluator **Hannah, Annette** | DRE # **DRE020722** | Rolling Log # **24-006-0093** | Evaluator's Agency **PHOENIX PD** | Case # **202400001913782** |
|---|---|---|---|---|

| Recorder/Witness ------ | Crash:  ☒ None  ☐ Fatal ☐ Injury ☐ Property | Arresting Officer's Agency **PHOENIX PD** | |
|---|---|---|---|

| Arrestee's Name (Last, First, Middle) **Longoria, Brianna** | Date of Birth ▮ | Sex **F** | Race **H** | Arresting Officer (Name, ID#) **Metheny, M    10818** |
|---|---|---|---|---|

| Date Examined / Time /Location **12/30/2024    00:11    1902 s 16th st** | Breath Test: Results:  **0.000** | Test Refused ☐  Instrument #:  **24440054** | Chemical Test:  Urine ☐   Blood ☒ Oral Fluid ☐   Test or tests refused ☐ |
|---|---|---|---|

| Miranda Warning Given  ☒ Yes  ☐ No Given by: **Metheny** | What have you eaten today? **Chicken and rice** | When? **7pm** | What have you been drinking? **Water** | How much? (see notes) | Time of last drink? **8pm** |
|---|---|---|---|---|---|

| Time now/ Actual (see notes)  **Last night** | When did you last sleep? | How long? **6 hrs** | Are you sick or injured? ☐ Yes ☒ No  ------ | Are you diabetic or epileptic? ☐ Yes ☒ No  ------ |
|---|---|---|---|---|

| Do you take insulin? ☐ Yes ☒ No  ------ | Do you have any physical defects? ☐ Yes ☒ No  ------ | Are you under the care of a doctor or dentist? ☐ Yes ☒ No  ------ |
|---|---|---|

| Are you taking any medication or drugs? ☐ Yes ☒ No  ------ | Attitude: **Cooperative** | Coordination: **Fair** |
|---|---|---|

| Speech: **Normal** | Breath odor: ------ | Face: **Normal** |
|---|---|---|

| Corrective Lenses:  ☒ None ☐ Glasses    ☐ Contacts, if so    ☐ Hard ☐ Soft | Eyes: ☐ Normal  ☒ Bloodshot  ☐ Watery | Blindness: ☒ None ☐ Left ☐ Right | Tracking: ☒ Equal ☐ Unequal |
|---|---|---|---|

| Pupil Size: ☒ Equal ☐ Unequal (explain) ____ | Resting Nystagmus ☐ Yes ☒ No | Vertical Nystagmus ☐ Yes ☒ No | Able to follow stimulus ☒ Yes ☐ No | Eyelids ☐ Normal ☒ Droopy |
|---|---|---|---|---|

| Pulse and Time | HGN | Left Eye | Right Eye | Convergence | /30 | One Leg Stand | /30 |
|---|---|---|---|---|---|---|---|
| 1.  74 / 00:24 | Lack of Smooth Pursuit | **PRESENT** | **PRESENT** | | | | |
| 2.  74 / 00:41 | Maximum Deviation | **NONE** | **NONE** | Right eye    Left eye | | | |
| 3.  74 / 01:00 | Angle of Onset | **None** | **None** | | | | |

**Modified Romberg Balance**
Approx.    Approx.

**Walk and Turn Test**

| | Cannot keep balance | ------ | | |
|---|---|---|---|---|
| | Starts too soon | ------ | | |
| | | | 1st Nine | 2nd Nine |
| | Stops walking | | ------ | ------ |
| | Misses heel-toe | | 9 | 9 |
| | Steps off line | | ------ | ------ |
| | Raises arms | | ------ | ------ |
| | Actual steps taken | | 9 | 9 |

One Leg Stand:
L    R

Sways while balancing
Uses arms to balance
Hopping
Puts foot down

| **Time Estimation** 26 estimated as 30 seconds | Describe turn ------ | Cannot do test (explain) ------ | Type of footwear: ------ |
|---|---|---|---|

**Finger to Nose**
(Draw lines to spots touched)

R          L

| PUPIL SIZE | Room light (2.5 - 5.0) | Darkness (5.0 - 8.5) | Direct (2.0 - 4.5) | Nasal area: **Clear** |
|---|---|---|---|---|
| **Left Eye** | 5.0 | 8.5 | 4.5 - 5.5 | Oral cavity: **Normal** |
| **Right Eye** | 5.0 | 8.5 | 4.5 - 5.0 | |

| Rebound Dilation: ☒ Yes ☐ No | Reaction to Light: **Slow** |
|---|---|

**RIGHT ARM**          **LEFT ARM**

| Blood Pressure **100/70 mmHg** | Temperature **97.9 °F** |
|---|---|

Muscle Tone:  ☒ Normal    ☐ Flaccid    ☐ Rigid
Comments:  ------

| What drugs or medications have you been using? **None** | How much? ------ | Time of use? ------ | Where were the drugs used? (Location) ------ |
|---|---|---|---|

| Date / Time of arrest: **12/30/2024 23:17** | Time DRE was notified: **00:00** | Evaluation start time: **00:11** | Evaluation completion time: **01:03** | ☐ Subject refused entire evaluation ☐ Subject stopped participating during evaluation |
|---|---|---|---|---|

| Officer's Signature: _Annette Hannah_ 1809 | Reviewed/approved by / date: _[signature]_ 18467  01/06/2025 | DRE # **DRE018467** |
|---|---|---|

| Opinion of Evaluator: | ☐ Not Impaired    ☐ Alcohol    ☐ CNS Stimulant    ☐ Dissociative Anesthetic    ☐ Inhalant |
|---|---|
| | ☐ Medical    ☐ CNS Depressant    ☐ Hallucinogen    ☐ Narcotic Analgesic    ☒ Cannabis |

**NOTES:**

**BLANK**

**Breath test time administered:**
**BLANK**

**Breath test administered by:**
**Metheny**

**Chemical test time collected:**
**00:02**

**Chemical test collected by:**
**Metheny**

**Time Miranda given:**
**23:43**

**How much? (What have you been drinking?)**
**3 bottles 16 oz**

**Time Now/Actual:**
**Didn't  know / ------ / 00:18**

**Convergence Notes:**
**She anticipated the stimulus but her eyes would jump when she would follow the stimulus**

**One Leg Stand Notes:**
**BLANK**

**Modified Romberg Eyelid Tremors:**
**No**

**Modified Romberg Body Tremors:**
**No**

**Modified Romberg Balance Notes:**
**She counted outloud**

**Walk and Turn Test Notes:**
**Kept arms kind of stiff next to her.**

**Finger to Nose Images:**







Tip, Searched                    Tip                              Tip







Tip                              Tip                              Tip

**Finger to Nose Eyelid Tremors:**
**No**

**Finger to Nose Body Tremors:**
**No**

**Finger to Nose Notes:**
**BLANK**

**Arm Mark Notes:**
**BLANK**

EXHIBIT

#5

Ex. #5

**Executive Hearing Office**
Arizona Department of Transportation
3838 North Central Avenue, 3rd Floor
Phoenix, Arizona  85012
Tel  (602) 712-7737
Fax (602) 241-1624
E-mail:  hearingoffice@azdot.gov
Website: www.azdot.gov/eho



**ARIZONA**
DEPARTMENT OF
**TRANSPORTATION**
Executive Hearing Office

## STATE OF ARIZONA
## DEPARTMENT OF TRANSPORTATION
## EXECUTIVE HEARING OFFICE

| | |
|---|---|
| **In The Matter of an Administrative License Suspension for Driving Under the Influence, A.R.S. § 28-1385:** | **Docket No. AP-37404675** |
| | **DECISION AND ORDER VOIDING ADMIN PER SE 90 DAY SUSPENSION** |
| **Brianna Beatrice Longoria,** | |
| **Petitioner.** | **Joshua K. Hatch, Administrative Law Judge** |

Appearances:
Brittnay L. LaBerry, Esq., Counsel for Petitioner

Pursuant to the authority of Arizona Revised Statutes (A.R.S.) § 28-1385, a hearing convened in the above-captioned matter on July 11, 2025, in the Executive Hearing Office of the Arizona Department of Transportation in Phoenix, Arizona.  Participants were notified that the hearing would proceed telephonically and were instructed to provide a call back number prior to the time of the hearing.  The purpose of the hearing was to determine whether Petitioner's Arizona driver privilege should be suspended for a period of 90 days pursuant to A.R.S. § 28-1385.

## JURISDICTION

An Order of Suspension was issued to the Petitioner pursuant to the authority of A.R.S. § 28-1385. The Administrative Law Judge has jurisdiction over the subject matter and Petitioner's privilege to operate a motor vehicle on Arizona highways pursuant to the authority of A.R.S. §§ 28-1385, 41-1061, 41-1062, 41-1063, and Arizona Administrative Code (A.A.C.) R17-1-502 and R17-1-505.

## SCOPE OF HEARING

The scope of this hearing is limited to: 1) whether the officer had reasonable grounds to believe the person was driving or was in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs; 2) whether the person was placed under arrest for a violation of A.R.S. § 4-244, paragraph 34, § 28-1381, § 28-1382, § 28-1383 or for a violation of title 13, chapter 11 or § 13-1201 or § 13-1204 involving a motor vehicle; 3) whether a test was taken, the results of which indicated any of the following: (a) an alcohol concentration in the person's blood or breath at the time the test was administered of either: (i) 0.08 or more, (ii) 0.04 or more if the person was driving or in actual physical control of a commercial motor vehicle, (b) any drug defined in § 13-3401 or its metabolite in the person's body, except if the person possesses a valid prescription for the drug; 4) whether the testing method used was valid and reliable; 5) whether the test results were accurately evaluated. A.R.S. § 28-1385(M). The Department is required to present sufficient evidence to establish facts related to the scope of this hearing.

## FINDINGS OF FACT

Officer Metheny, badge #9876, Phoenix Police Department, was duly notified of the date, time and location of the hearing. The hearing notice was returned as undeliverable with a note

2

indicating that Officer Matheny is no longer employed by the Phoenix Police Department. No forwarding address was provided. Officer Metheny failed to appear, failed to provide a call back number where they could be contacted at the time of the hearing, and failed to inform the Administrative Law Judge of good cause for such non-appearance. Testimony of a law enforcement officer is required to establish elements within the scope of the hearing as required by A.R.S. § 28-1385.  Without that evidence, the Order of Suspension cannot be sustained. Petitioner's Counsel appeared as indicated in the Notice of Hearing.

## DECISION AND ORDER

Based upon the Department's failure to present evidence sufficient to establish the elements within the scope of the hearing as required by law, the Order of Suspension is hereby **VOIDED**.

It is so **ORDERED** this 11th day of July, 2025.

/s/ *Joshua K. Hatch*
Joshua K. Hatch, Administrative Law Judge
Executive Hearing Office

**IMPORTANT: These notes contain information concerning your rights. Read them carefully.**

Driving privileges NOT automatically restored.  Unless other sanctions are in effect, you may apply for a duplicate driver license at any convenient Motor Vehicle Division office.  You may also reinstate online at www.azmvdnow.gov.

You should be aware that an Arizona driver license may also be suspended as a result of Court action in any pending criminal trial (DUI), a proceeding which is separate and apart from this administrative proceeding.

3

## CERTIFICATE OF SERVICE

Copy mailed this 14th day of July, 2025, to:

Brianna Beatrice Longoria
7127 W. Mountain View Rd.
Peoria, AZ 85345

Brittnay L. LaBerry
Oliverson Law, PLLC
60 East Rio Salado Parkway
Suite 900
Tempe,, AZ 85281


*/s/ Veronica Chavez for;*
Nancy A. Nist, Legal Assistant

4